## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **MONUMENT PEAK** | § | |
| **VENTURES, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 2:25-cv-956** |
| **v.** | § | |
| | § | |
| **ARASHI VISION INC. d/b/a** | § | **JURY TRIAL** |
| **INSTA360,** | § | |
| **Defendant.** | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Monument Peak Ventures, LLC ("MPV") brings this action against

Arashi Vision Inc. d/b/a Insta360, a Chinese Corporation ("Insta360") for

infringement of U.S. Patent Nos. 8,237,771; 8,274,544; 8,842,155; 8,856,418;

9,848,158; 10,425,612; and 10,728,490 and alleges the following:

### THE PARTIES

1.      Monument Peak Ventures, LLC, is a Texas Limited Liability

Company with its principal place of business in Allen, Texas.

2.      On information and belief, Defendant Insta360 is a Chinese

corporation with a principal place of business at 12F, Building T2, Hengyu

Qianhai Financial Center, Nashan District, Shenzhen, P.R. China.

3.     Insta360 manufactures, sells, offers for sale, and/or licenses in the United States, and/or imports into the United States computer software products including Insta360's Connect camera system, X5 camera, Insta360 app, and products, software, and services that provide similar functionality, all of which infringe MPV's patent claims.

4.     Insta360 sells the infringing products for distribution throughout the United States and to customers in this district.

## JURISDICTION AND VENUE

5.     MPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) which provides that "a defendant not resident in the United States may be sued in any judicial district."

7.     Insta360 is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long-Arm Statute and consistent with due process, in view of its substantial business in Texas and in this judicial district including: (a) its infringing activities alleged in this complaint by which

Defendant purposefully avails itself of the privilege of conducting business activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Texas and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Texas and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers.

8.      Insta360 transacts business in this judicial district and has committed acts of infringement in this judicial district.

9.      Insta360's presence and conduct directed to residents of Texas and into this district is intended to further and advance the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing Insta360 products in Texas and in this district.

10.     Insta360 directly or through intermediaries including authorized distributors makes, uses, offers for sale, imports, sells, advertises, or distributes products and services and inducing infringement of MPV's patents in the United States, in Texas, and in this district.

11.    Insta360 conducts its business of marketing, distributing, deploying, and selling products and services in Texas and in this district through its agents, representatives, affiliates, related entities, partners, distributors, and retailers.

12.    Insta360 continuously and systematically solicits business and contracts with residents of Texas and this district.

13.    This Court has personal jurisdiction over Insta360, directly and/or indirectly via the activities of Insta360 and its intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers. Alone and in concert with these entities, Insta360 has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.

14.    The Court's exercise of personal jurisdiction over Insta360 is also appropriate under Federal Rule of Civil Procedure 4(k)(2) because MPV's patent infringement claims arise under federal law; Insta360 is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over Insta360 comports with due process under the U.S. Constitution.

## MONUMENT PEAK VENTURES

15.     MPV owns a portfolio of patents invented by the Eastman Kodak

Company.  Since acquiring the Kodak portfolio, MPV has promoted adoption of

technologies claimed in Kodak portfolio and has entered into license agreements

with over thirty companies.

16.     MPV asserts that Insta360 infringes, directly and indirectly, certain

claims of U.S. Patent Nos. 8,237,771 (the "'771 Patent"); 8,274,544 (the "'544

Patent"); 8,842,155 (the "'155 Patent"); 8,856,418 (the "'418 Patent"); 9,848,158

(the "'158 Patent"); 10,425,612 (the "'612 Patent"); and 10,728,490 (the "'490

Patent") (the "MPV Asserted Patents").

## ASSERTED MPV PATENTS

17.     The MPV Asserted Patents claim inventions born from the ingenuity

of the Eastman Kodak Company ("Kodak"), an iconic American imaging

technology company that dates back to the late 1800s.



18.    The first model of a Kodak camera was released in 1888.

19.    In 1935 Kodak introduced "Kodachrome," a color reversal stock for movie and slide film.



20.    In 1963 Kodak introduced the Instamatic camera, an easy-to-load point-and-shoot camera.

21.    By 1976 Kodak was responsible for 90% of the photographic film and 85% of the cameras sold in the United States.

22.    At the peak of its domination of the camera industry, Kodak invented the first self-contained digital camera in 1975.



23.    By 1986 Kodak had created the first megapixel sensor that was capable of recording 1,400,000 pixels.

24.    While innovating in the digital imaging space Kodak developed an immense patent portfolio and extensively licensed its technology in the space.

25.    In 2010, Kodak received $838,000,000 in patent licensing revenue.

26.    As part of a reorganization of its business, Kodak sold many of its patents to some of the biggest names in technology including Google, Facebook,

Amazon, Microsoft, Samsung, Adobe Systems, HTC and others for $525,000,000.

27.    While scores of companies have paid to license the Kodak patent portfolio owned by MPV, Insta360 has refused to recognize MPV's patents and license the inventions it has profited from using.

## THE ACCUSED PRODUCTS

28.    The term "Accused Products" include Insta360 products that feature automated videography, forming video summaries including a particular person, remotely controlled videography, or UI for video trimming including Insta360's Connect camera system, X5 camera, Insta360 app, and products, software, and services that provide similar functionality.

## NOTICE OF MPV ASSERTED PATENTS

29.    MPV contacted Insta360 on July 23, 2025, regarding potential licensing of the MPV patent portfolio, including the Asserted Patents. Insta360 received notice that it infringed U.S. Patent Nos. 8,237,771; 8,274,544; 8,842,155; 8,856,418; 9,848,158; 10,425,612; and 10,728,490 no later than the filing date of this complaint.

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 8,237,771

30.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

31.    MPV is the owner, by assignment, of U.S. Patent No. 8,237,771.  The '771 Patent was issued by the United States Patent and Trademark Office on August 7, 2011.

32.    As the owner of the '771 Patent, MPV holds all substantial rights in and under the '771 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

33.    The '771 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

34.    MPV alleges that Insta360 has infringed and continues to infringe at least claim 1 of the '771 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products that infringe the '771 Patent without authorization or license as exemplified below.

35.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '771 Patent and feature structures and/or functionality as shown below.

36.    Insta360 has used and tested the Accused Products in the United States.

37.    Insta360 thus has infringed and continues to infringe the '771 Patent.

38.    Insta360's activities have been and continue without authority of license under the '771 Patent.

39.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

40.    The Accused Products satisfy each and every element of each asserted claim of the '771 Patent either literally or under the doctrine of equivalents.

41.    Claim 1 recites an embodiment of the claimed subject matter:

A method for framing one or more subjects captured on video during a video communication event with a remote viewer, the method comprising the steps of:

receiving video of a first subject in an environment from a camera;

determining a current shot framing of the first subject in the video images, a computer and an associated image processor, relative to a shot selection and subject positioning within the framed shot;

determining at least one subject activity metric for the observed movement of the first subject in the received video, relative to the current framing and level of motion thresholds;

analyzing the subject movement of the first subject, relative to the determined at least one subject activity metric and the current framing, to determine scene change probabilities, relative to the determined subject activity metrics and current shot subject motion thresholds, to determine whether video capture of the at least first subject can continue using modifications to the current subject framing or that framing of the at least first subject can be improved with new subject framing;

determining alternate shot options, including associated shot selection probabilities, based upon associated shot dependent subject motion thresholds and the determined subject activity metrics, if the determined scene change probability for new subject framing is greater than a predetermined value;

selecting a next shot from among the determined alternate shot options based upon the determined shot selection probabilities;

instructing the image processor or camera to re-frame the first

subject in accordance with the newly selected next shot, including

associated shot framing and any new video capture settings;

and transmitting video images to the remote viewer using the newly Instructed

shot framing and video capture settings.

42.    For example, the Accused Products (*e.g.,* Insta360 Connect) utilizes a

method for framing one or more subjects captured on video during a video

communication event (*e.g.,* video conference) with a remote viewer.



https://www.insta360.com/blog/enterprise/insta360-connect-new-ai-video-bar.html



https://www.insta360.com/blog/enterprise/insta360-connect-new-ai-video-bar.html

43.    The Accused Products perform a method that receives video of a first subject in an environment from a camera and determines a current shot framing of the first subject in the video images, with a computer and an associated image processor, relative to a shot selection and subject positioning within the framed shot.

44.    For example, the Accused Products (*e.g.*, Insta360 Connect) frames one or more subjects captured on video by receiving a video of a first subject in a conference room from the camera and determining a current shot framing of the first subject in the video images with a computer and image processor, relative to a shot selection and subject's positioning within the framed shot.



https://www.youtube.com/watch?v=LT5SLClnnjg

45.     The Accused Products perform a method that determines at least one subject activity metric for the observed movement of the first subject in the received video, relative to the current framing and level of motion thresholds.

46.     For example, the Accused Products determine a subject activity metric (*e.g.,* minimum movement that triggers camera switching) for the first subject in the received video, relative to the current framing and level of motion thresholds.





https://store.insta360.com/product/connect?c=3519&from=nav

47.    The Accused Products perform a method that analyzes the subject

movement of the first subject, relative to the determined at least one subject activity metric and the current framing, to determine scene change probabilities, relative to the determined subject activity metrics and current shot subject motion thresholds, to determine whether video capture of the at least first subject can continue using modifications to the current subject framing or that framing of the at least first subject can be improved with new subject framing.

48.    For example, the Accused Products analyze the subject movement, relative to the subject activity metric and the current framing, and determines scene change probabilities (*e.g.,* the likelihood that a new shot is needed) through its algorithms (*e.g.,* relative to the subject activity and shot motion thresholds) to determine whether the current framing of the shot is sufficient, or whether the other camera view is more suitable.



https://store.insta360.com/product/connect?c=3519&from=nav



https://store.insta360.com/product/connect?c=3519&from=nav



https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html

49.     The Accused Products perform a method determines alternate shot options, including associated shot selection probabilities, based upon associated shot dependent subject motion thresholds and the determined subject activity metrics, if the determined scene change probability for new subject framing is greater than a predetermined value and selecting a next shot from among the determined alternate shot options based upon the determined shot selection probabilities.

50.     For example, the Accused Products determines alternate shots with the other camera view (e.g., using the gimbal camera), based upon the motion thresholds in the new shot and subject activity metrics in the new shot (e.g., how much of the face is visible). If the metrics show this new camera view is more suitable, the Insta360 Connect selects the new camera view as the main image of that subject.

 

*See above* the example for the view before and after switching subjects.

## Advanced Imaging, Unmatched Visuals

Connect boasts first-class imaging hardware with a **dual 4K camera**. The setup consists of a **wide-angle camera with a 1/1.3" CMOS sensor** and a **telephoto gimbal camera**. The two work seamlessly together to capture 4K group views and individual close-ups for unparalleled meeting visuals. With a wider angle, 48MP telephoto lens, and integrated gimbal, participants across the room are seen as much as those at the front.

https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html



Powered by proprietary AI algorithms, **8K Gallery Mode** ensures every participant gets an individual window in **industry-leading 8K resolution**, with a maximum of eight windows at a time. Even if a person accidentally moves out of frame in Gallery Mode, Connect will locate them within three seconds and display them on screen.

https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html

51.    The Accused Products perform a method that instructs the image processor or camera to re-frame the first subject in accordance with the newly selected next shot, including associated shot framing and any new video capture settings.

52.    For example, the Accused Products instruct the camera to reframe the subject in accordance with the new view (*e.g.,* by tilting the gimbal or switching between cameras) (*e.g.,* associated shot framing and any new video capture settings).

 

https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html

*See above* the example of the view before and after switching.





https://store.insta360.com/product/connect?c=3519&from=nav

53.    The Accused Products perform a method that transmits video images to the remote viewer using the newly instructed shot framing and video capture settings.

**1. What video conferencing platforms does Insta360 Connect support?** —

Insta360 Connect works seamlessly with all major platforms, including Zoom, Microsoft Teams, Google Meet, and more. Just plug it into your laptop via USB and you're ready to go.



A natural, inclusive view that presents the whole team together, for a realistic experience for those joining a meeting remotely.



Ensure every participant gets their own individual window, no matter who's speaking.

https://store.insta360.com/product/connect?c=3519&from=nav

54.    Insta360 was provided with notice of the '771 Patent and how it infringes at least claim 1 no later than the filing date of this Complaint.  Insta360's

knowledge of the '771 Patent, which covers operating the Accused Products used as intended such that all limitations of the asserted claims of the '771 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products that directly infringes the '771 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

55.     Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, and/or importation of the Accused Products directly infringes the '771 Patent.

56.     With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, distribution, offer for sale, license and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '771 Patent are met directly infringes the '771 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '771 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with automated videography capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the

automated videography functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party infringers how to make and use the automated videography features of the Accused Products.

57.    Insta360 induces the third-party infringers to infringe the asserted claims of the '771 Patent by directing or encouraging them to operate, make, sell, offer to sell, license, and/or import the Accused Products which satisfy all limitations of the asserted claims of the '771 Patent.  Insta360 advertises and promotes the automated videography features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

58.    In response, the third-party infringers acquire, make, sell, offer to sell, license, operate, and/or import the Accused Products in an infringing manner.

59.     Insta360 specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '771 Patent, and Insta360 knew of or was willfully blind to such infringement.

60.     Insta360 advises, encourages, and/or aids the third-party infringers to directly infringe by using the automated videography features of the Accused Products.  With knowledge or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '771 Patent are met directly infringes the '771 Patent, Insta360 actively encourages and induces the third-party infringers to directly infringe the '771 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information on its website directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '771 Patent.

61.     Insta360 has induced and continues to induce infringement of the '771

Patent under 35 U.S.C. § 271(b).

62.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '771 Patent. For example, the Accused Products include automated videography features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

63.    Insta360 also knew that the accused products are operated in a manner that practices each asserted claim of the '771 Patent.

64.    The automated videography features are specially made and adapted to infringe the asserted claims of the '771 Patent.

65.    The automated videography features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '771 Patent, it has no substantial non-infringing use. At least by MPV's notice of Insta360's

infringement, based upon the foregoing facts, Insta360 knew of or was willfully blind to the fact that such automated videography functionality was especially made and adapted for—and was in fact used in—the accused products in a manner that is covered by the '771 Patent.

66.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '771 Patent under 35 U.S.C. § 271(c).

67.    Insta360's continuing acts of infringement of the '771 Patent since this complaint was filed are carried out with knowledge of the '771 Patent and how the Accused Products infringe them.  Rather than take a license to the '771 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

68.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 8,274,544

69.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

70.    MPV is the owner, by assignment, of U.S. Patent No. 8,274,544.  The '544 Patent was issued by the United States Patent and Trademark Office on September 25, 2012.

71.    As the owner of the '544 Patent, MPV holds all substantial rights in and under the '544 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

72.    The '544 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

73.    Insta360 has infringed and continues to infringe at least claim 16 of the '544 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products that infringe the '544 Patent without authorization or license as exemplified below.

74.    The Accused Products are designed, manufactured, and intended to be

used in normal operation to practice the '544 Patent and feature structures and/or functionality as shown below.

75.    Insta360 has used and tested the Accused Products in the United States.

76.    Insta360 has infringed and continues to infringe the '544 Patent.

77.    Insta360's activities were without authority of license under the '544 Patent.

78.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

79.    The Accused Products satisfy each and every element of each asserted claim of the '544 Patent either literally or under the doctrine of equivalents.

80.    Claim 35 recites an embodiment of the claimed subject matter:

A method of automated videography, in which video images of at least one subject in a local environment are acquired using an automated videography system, comprising:

capturing video images with the automated videography system according to current video capture settings while using one or more cameras during a videography event consisting of one or more video scenes which involve the at least one subject and the local environment, where the current video capture settings define current subject framing within a selected shot and current camera parameters;

analyzing the captured video images of a current video scene as captured according to the current video capture settings, including determining subject activity using at least one subject activity metric appropriate to the current subject framing;

determining scene change probabilities, relative to the determined at least one subject activity metric and current shot subject motion thresholds, to determine whether video capture of the at least one subject can continue using the current subject framing or that framing of the at least one subject can be improved with new subject framing;

determining alternate shot options, including associated shot selection probabilities, based upon the determined subject activity metrics and associated shot dependent subject motion thresholds, if the determined scene change probability for new subject framing is greater than a predetermined value;

electing a next shot from among the determined alternate shot options based upon the determined shot selection probabilities; and

automatically modifying ongoing video image capture in accordance with the newly selected next shot, including associated new subject framing and any new video capture settings.

81.    The Accused Products perform a method of automated videography, in which video images of at least one subject in a local environment are acquired using an automated videography system.

82.    For example, the Accused Products performs automated capturing of video for web conferencing, in which video images of a person (*e.g.,* "one subject in a local environment") are acquired using its dual 4K cameras (*e.g.,* "automated videography system").



https://www.insta360.com/blog/enterprise/insta360-connect-new-ai-video-bar.html



https://www.youtube.com/watch?v=LT5SLClnnjg





https://store.insta360.com/product/connect?c=3519&from=nav

> **1. What video conferencing platforms does Insta360 Connect support?** —
>
> Insta360 Connect works seamlessly with all major platforms, including Zoom, Microsoft Teams, Google Meet, and more. Just plug it into your laptop via USB and you're ready to go.

https://store.insta360.com/product/connect?c=3519&from=nav

83.    The Accused Products perform a method that captures video images with the automated videography system according to current video capture settings while using one or more cameras during a videography event consisting of one or more video scenes which involve the at least one subject and the local environment, where the current video capture settings define current subject framing within a selected shot and current camera parameters.

84.     For example, the Accused Products capture video images according to current configured settings such as frame positioning (*e.g.,* "capture settings") while using the cameras during a meeting consisting of a person moving (*e.g.,* "at least one subject and the local environment"), where the current configured settings define a current field of view (*e.g.,* "current subject framing") within a selected scene (*e.g.,* "shot") and current camera settings.



https://store.insta360.com/product/connect?c=3519&from=nav

*See above* the subject view focused on a single subject and the full camera view in the lower righthand corner and *see below* the same views with a moving subject.



https://store.insta360.com/product/connect?c=3519&from=nav

85.    The Accused Products perform a method that analyzes the captured video images of a current video scene as captured according to the current video capture settings, including determining subject activity using at least one subject activity metric appropriate to the current subject framing.

86.    For example, the Accused Products analyze the captured video images of a current scene as captured according to the current recording settings, including determining the movement of a person's face (*e.g.,* subject activity) and direction of motion (*e.g.,* "at least one subject activity metric") appropriate to the current field of view.



https://store.insta360.com/product/connect?c=3519&from=nav

*See above* the subject-tracked view alongside the full camera view.

**SPEAKER TRACKING**

# Always on point.

Intelligent voiceprint, face, and lip recognition technology precisely track the speaker and keep them center stage as they speak. Multi-person tracking monitors all participants, enabling quick and accurate transitions between speakers.

https://store.insta360.com/product/connect?c=3519&from=nav



Powered by proprietary AI algorithms, **8K Gallery Mode** ensures every participant gets an individual window in **industry-leading 8K resolution**, with a maximum of eight windows at a time. Even if a person accidentally moves out of frame in Gallery Mode, Connect will locate them within three seconds and display them on screen.

https://store.insta360.com/product/connect?c=3519&from=nav

87.     The Accused Products perform a method that determines scene change probabilities, relative to the determined at least one subject activity metric and current shot subject motion thresholds, to determine whether video capture of the at least one subject can continue using the current subject framing or that framing of the at least one subject can be improved with new subject framing.

88.     For example, the Accused Products determine field of view change probabilities (*e.g.,* "scene change probabilities"), relative to the determined amount

of motion and the amount of one's face visible in the shot (*e.g.,* "current shot subject motion thresholds"), to determine whether video recording of the person can be improved with a new field of view (*e.g.,* "new subject framing").



*See above* a shot before switching (poor face visibility) and *see below* a shot after switching featuring everyone's faces in frame.



https://store.insta360.com/product/connect?c=3519&from=nav

89.     The Accused Products perform a method that determines alternate shot options, including associated shot selection probabilities, based upon the determined subject activity metrics and associated shot dependent subject motion thresholds, if the determined scene change probability for new subject framing is greater than a predetermined value and elects a next shot from among the determined alternate shot options based upon the determined shot selection probabilities.

90.     For example, the Accused Products determine alternate shots with the other camera view (*e.g.,* using the gimbal camera), based upon the motion thresholds in the new shot and subject activity metrics in the new shot (*e.g.,* how much of the face is visible). If the metrics show this new camera view is better, the Insta360 Connect selects the new camera view as the main image of that subject.



https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html

## Advanced Imaging, Unmatched Visuals

Connect boasts first-class imaging hardware with a **dual 4K camera**. The setup consists of a **wide-angle camera with a 1/1.3" CMOS sensor** and a **telephoto gimbal camera**. The two work seamlessly together to capture 4K group views and individual close-ups for unparalleled meeting visuals. With a wider angle, 48MP telephoto lens, and integrated gimbal, participants across the room are seen as much as those at the front.

https://www.insta360.com/blog/enterprise/insta360-connect-video-bar-available-now.html



*See above* a shot before switching (poor face visibility) and *see below* a shot after switching featuring everyone's faces in frame.



https://store.insta360.com/product/connect?c=3519&from=nav

91.     The Accused Products perform a method that automatically modifies ongoing video image capture in accordance with the newly selected next shot, including associated new subject framing and any new video capture settings.

92.     For example, the Accused products automatically modify the ongoing recording image with new subject framing and new video capture settings (*e.g.,* by tilting the gimbal or switching between cameras).



*See above* a shot before switching (poor face visibility) and *see below* a shot after switching featuring everyone's faces in frame.



https://store.insta360.com/product/connect?c=3519&from=nav





https://store.insta360.com/product/connect?c=3519&from=nav

93.    Insta360 was provided with notice that it infringes the '544 Patent no later than the filing date of this complaint.  Insta360's knowledge of the '544 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '544 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '544 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

94.    Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use,

manufacture, sale, offer for sale, and/or importation of the Accused Products directly infringes the '544 Patent.

95.     With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, distribution, offer for sale, license and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '544 Patent are met directly infringes the '544 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '544 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with automated videography capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the automated videography functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party infringers how to make and use the automated videography features of the Accused Products.

96.     Insta360 induces third-party infringers to infringe the asserted claims

of the '544 Patent by directing or encouraging them to operate, make, sell, offer to sell, license, and/or import the Accused Products which satisfy all limitations of the asserted claims of the '544 Patent. Insta360 advertises and promotes the automated videography features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

97.    In response, the third-party infringers acquire, make, sell, offer to sell, license, operate, and/or import the Accused Products in an infringing manner.

98.    Insta360 specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '544 Patent, and Insta360 knew of or was willfully blind to such infringement. Insta360 advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the automated videography features of the Accused Products. Having known or been willfully blind to the fact that the third-party infringers' use of the Accused

Products in their intended manner such that all limitations of asserted claims of the '544 Patent were met directly infringed the '544 Patent, Insta360 actively encouraged and induced the third-party infringers to directly infringe the '544 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information on its website directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '544 Patent.

99.    Insta360 has induced and continues to induce infringement of the asserted claims of the '544 Patent under 35 U.S.C. § 271(b).

100.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '544 Patent.  The Accused Products include automated videography features identified

above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

101.    Insta360 also knew that the accused products are operated in a manner that practices each asserted claim of the '544 Patent.

102.    The automated videography features are specially made and adapted to infringe the asserted claims of the '544 Patent.

103.    The automated videography features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '544 Patent, it has no substantial non-infringing use. At least by MPV's notice of Insta360's infringement, based upon the foregoing facts, Insta360 knew of or was willfully blind to the fact that such automated videography functionality was, in fact, used as intended and as especially made and adapted in the Accused Products in a manner that is covered by the '544 Patent.

104.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '544 Patent under 35 U.S.C. § 271(c).

105.   Insta360's continuing acts of infringement of the '544 Patent since notice and since this complaint was filed are, therefore, carried out with knowledge of the asserted claims of the '544 Patent and how the Accused Products infringe them.  Rather than take a license to the '544 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

106.   Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 3
## INFRINGEMENT OF U.S. PATENT NO. 8,842,155

107.   MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

108.   MPV is the owner, by assignment, of U.S. Patent No. 8,842,155.  The '155 Patent was issued by the United States Patent and Trademark Office on

September 23, 2014.

109.    As the owner of the '155 Patent, MPV holds all substantial rights in and under the '155 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

110.    The '155 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

111.    Insta360 has infringed, and continues to infringe, at least claim 1 of the '155 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '155 Patent without authorization or license as exemplified below.

112.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '155 Patent and feature structure and/or functionality comprising the steps noted above.

113.    Insta360 has used and tested the Accused Products in the United States.

114.    Insta360 has infringed and continues to infringe the '155 Patent.

115.    Insta360's activities were without authority or license.

116.    Insta360's users, customers, distributors, agents and/or other third

parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

117.    The Accused Products meet each and every limitation of each asserted claim of the '155 Patent either literally or under the doctrine of equivalents.

118.    Claim 15 recites an embodiment of the claimed subject matter:

An apparatus for adapting a displayed image, the apparatus comprising:

a capture device configured to capture a digital video or still image, wherein the digital video or still image is captured based on instructions received from a remote device over a wireless communication network;

a processor operatively coupled to the capture device and configured to adjust an allowed image capture area of the digital video or still image such that at least a portion of a background of the digital video or still image is removed from the digital video or still image;

a transmitter operatively coupled to the processor and configured

to transmit the adjusted digital video or still image over the

wireless communication network to the remote device; and

a display device configured to present a verification image,

wherein the verification image is configured to provide visual

verification as to what the transmitted adjusted digital video

or still image looks like.

119.   The Accused Products comprise an apparatus for adapting a displayed

image.

120.   For example, The Accused Products (Insta360 camera systems) adapt

displayed video images.



https://www.youtube.com/watch?v=sR4btLkSS2k

121.   The Accused Products comprise a capture device configured to

capture a digital video or still image, wherein the digital video or still image is captured based on instructions received from a remote device over a wireless communication network.

122.    For example, the Accused Products (*e.g.,* the Insta360 X5) (*e.g.,* "capture device") capture a video or photo image (*e.g.,* "digital video or still image"), wherein the video or photo image is captured based on configurations (*e.g.,* "instructions") received from a smartphone running the Insta360 app (*e.g.,* "remote device") over a wireless communication network (*e.g.,* Bluetooth, Wi-Fi).



https://store.insta360.com/product/x5



https://www.youtube.com/watch?v=xnKfKxfzZw4

123.   The Accused Products comprise a processor operatively coupled to the capture device and configured to adjust an allowed image capture area of the digital video or still image such that at least a portion of a background of the digital video or still image is removed from the digital video or still image.

124.   For example, the Accused Products include a processor configured to

operate in Single Lens Mode (e.g., "adjust an allowed image capture area"). Enabling Single Lens Mode reduces the allowed image capture area from the default 360º view (e.g., "at least a portion of the background") and removes the 360º part of the image (e.g., "removed from the digital video or still image").

A 360° camera works by using two or more lenses to capture a 360° view of everything around it. It's a little like having multiple cameras in one, where the camera then stitches these images together into a 360° sphere. Using the

If you just want to use your Insta360 X4 as a traditional camera, you can use the 4K Single-Lens mode. This is just like using a regular action camera and captures traditional rectangular footage. This is great for point-of-view shots.

https://www.insta360.com/blog/tips/how-does-a-360-camera-work.html

## Q1 What shooting modes does X5 support?

| Type | Lens Mode | Shooting Mode |
|------|-----------|---------------|
| Photo Mode | Single Lens | Photo |
| Photo Mode | 360° | Photo (including HDR, AEB), Interval, Starlapse (Starlapse Video & Star Trails Photo), Burst |
| Video Mode | Single Lens | Video, Me Mode, Loop Recording, FreeFrame Video |
| Video Mode | 360° | Video (including Active HDR), PureVideo, InstaFrame, Timelapse, TimeShift, Bullet Time, Loop Recording, Road Mode |

https://onlinemanual.insta360.com/x5/en-us/faq/specs/shooting

 

https://www.youtube.com/watch?v=sR4btLkSS2k

*See above* single lens mode disabled (left) and single lens mode enabled (right).

125.    The Accused Products comprise a transmitter operatively coupled to the processor and configured to transmit the adjusted digital video or still image over the wireless communication network to the remote device.

126.    For example, the Accused Products include a transmitter operatively coupled to the processor and configured to transmit the video or photo image with Single Lens Mode enabled over the wireless connection to the smartphone running the Insta360 app.



https://www.youtube.com/watch?v=qzmaeVtNXQ0

127.  The Accused Products comprise a display device configured to present a verification image, wherein the verification image is configured to provide visual verification as to what the transmitted adjusted digital video or still image looks like.

128.  For example, the Accused Products present a preview image (e.g., "a verification image") on the smartphone running

129.  the Insta360 app (e.g., "display device") to provide a visual

verification as to the camera's field of view (e.g., "what the transmitted adjusted digital video or photo image looks like") in the captured video or photo. If Single Lens Mode is enabled, the Insta360 app will show the truncated field of view.



https://www.youtube.com/watch?v=xnKfKxfzZw4

130.    MPV notified Insta360 that it infringed the '155 Patent no later than the filing date of this complaint.

131.    Insta360's knowledge of the '155 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '155 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '155 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

132.    Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '155 Patent.

133.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '155 Patent are met directly infringes the '155 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '155 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with adaptive image capture capabilities to the third-party

infringers; supporting and managing the third-party infringers' use of the Insta360 automated videography functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party infringers how to make and use the adaptive image capture features of the Accused Products.

134.    Insta360 induces third-party infringers to infringe the asserted claims of the '155 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '155 Patent. Insta360 advertises and promotes the adaptive image capture features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner.  Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

135.    In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

136.   Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '155 Patent. For example, the Accused Products include adaptive image capture features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

137.   Insta360 also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '155 Patent.

138.   The adaptive image capture features are specially made and adapted to infringe the asserted claims of the '155 Patent.

139.   The adaptive image capture features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the Accused Products solely in a manner that is covered by the '155 Patent, they have no substantial non-infringing use. At least by MPV's notice of

Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '155 Patent and they were in fact used to infringe.

140.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '155 Patent under 35 U.S.C. § 271(c).

141.    Upon information and belief, Insta360's acts of infringement of the '155 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '155 Patent and how the Accused Products infringe them.  Rather than take a license to the '155 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

142.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 4
## INFRINGEMENT OF U.S. PATENT NO. 8,856,418

143.   MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

144.   MPV is the owner, by assignment, of U.S. Patent No. 8,856,418.  The '418 Patent was issued by the United States Patent and Trademark Office on October 7, 2015.

145.   As the owner of the '418 Patent, MPV holds all substantial rights in and under the '418 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

146.   The '418 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

147.   Insta360 has infringed, and continues to infringe, at least claim 1 of the '418 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '418 Patent without authorization or license as exemplified below.

148.   The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '418 Patent and feature structure and/or functionality comprising the steps noted above.

149.   Insta360 has used and tested the Accused Products in the United States.

150.   Insta360 has infringed and continues to infringe the '418 Patent.

151.   Insta360's activities were without authority or license.

152.   Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

153.   The Accused Products meet each and every limitation of each asserted claim of the '418 Patent either literally or under the doctrine of equivalents.

154.   Claim 17 recites an embodiment of the claimed subject matter:

A non-transitory computer-readable medium having instructions stored thereon, the instructions comprising:

instructions to detect at least two handheld devices, wherein each of the at least two handheld devices is connected to an interface;

instructions to determine an inventory of available resources for each of the at least two handheld devices, wherein the

available resources are each a functionality of a handheld

device;

instructions to determine a plurality of possible combined use

modes based on the inventory of available resources; and

instructions to select a combined use mode from the plurality of

possible combined use modes, wherein the combined use

mode accesses the available resource of each of the at least

two handheld devices, and wherein the combined use mode

provides control of the available resources of each of the at

least two handheld devices at the same time.

155.   The Accused Products comprise a non-transitory computer-readable medium having instructions stored thereon, the instructions comprising instructions to detect at least two handheld devices, wherein each of the at least two handheld devices is connected to an interface.

156.   For example, The Accused Products (the Insta360 app) are stored on the user's smartphone (*e.g.*, in a non-transitory computer-readable medium) and contains instructions to detect cameras (*e.g.,* the Insta360 X5), Apple Watches, and microphones (*e.g.,* the Insta360 Mic Air) (*e.g.,* "at least two handheld devices")

connected to an interface (e.g., Bluetooth).



https://www.youtube.com/watch?v=ZmffZItX4_0

Steps:

1. Install the Insta360 app on your Apple Watch.
2. Enable Bluetooth on both the watch and phone, and ensure they are paired.
3. Mount your phone on Flow 2 Pro, ensuring the gimbal is awake.
4. Open the Insta360 app on your phone, then launch the app on your watch and select your device. You can now remotely preview or control the gimbal and camera functions. Key features

https://onlinemanual.insta360.com/flow2pro/en-us/camera/watch



https://www.youtube.com/watch?v=laYJqOB-7DE

157.   The Accused Products contain instructions to determine an inventory of available resources for each of the at least two handheld devices, wherein the available resources are each a functionality of a handheld device.

158.   For example, the Accused Products determines the selectable parameters (*e.g.,* "an inventory of available resources") for each of the at least two connected devices, wherein those resources are each a functionality of a handheld device.



Insta360 in-app tutorial

https://onlinemanual.insta360.com/oner/en-us/editing/stats/applewatch

https://onlinemanual.insta360.com/flow2/enus/faq/accessories/mic_air

159.   The Accused Products contain instructions to determine a plurality of possible combined use modes based on the inventory of available resources.

160.   For example, the Accused Products determines combined use modes based on selectable parameters of the connected devices (*e.g.*, "the inventory of available resources"), of which there are various combinations (*e.g.*, "a plurality of possible combined use modes"). For example, the camera could be in Single Lens mode, with Apple Watch GPS tracking enabled and the Mic Air's noise cancellation disabled. Similarly, the camera could be in loop recording mode, with

Apple Watch GPS tracking and the Mic Air's noise cancellation both enabled.



https://www.youtube.com/watch?v=xnKfKxfzZw4

> Hooking up with Insta360's ecosystem is effortless. Pairing with the X5 or Flow Series takes seconds, and the Insta360 app lets you monitor audio live or tweak settings. Its AI tools, like FlashCut, sync

https://www.techeblog.com/insta360-mic-air-features-price-review/

161.   The Accused Products contain instructions to select a combined use mode from the plurality of possible combined use modes, wherein the combined use mode accesses the available resource of each of the at least two handheld devices, and wherein the combined use mode provides control of the available resources of each of the at least two handheld devices at the same time.

162.   For example, the Accused Products provide the option to change various device parameters in a variety of combinations (*e.g.*, "select a combined use mode from the plurality of possible combined use modes") on the connected devices, wherein the combined use mode accesses the available resource of each of the at least two handheld devices, and wherein the combined use mode provides control of the available resources of each of the at least two handheld devices at the same time. For example, the camera could be in Single Lens mode, with Apple Watch GPS tracking enabled and the Mic Air's noise cancellation disabled. Similarly, the camera could be in loop recording mode, with Apple Watch GPS tracking and the Mic Air's noise cancellation both enabled.



https://www.youtube.com/watch?v=xnKfKxfzZw4

Hooking up with Insta360's ecosystem is effortless. Pairing with the X5 or Flow Series takes seconds, and the Insta360 app lets you monitor audio live or tweak settings. Its AI tools, like FlashCut, sync

https://www.techeblog.com/insta360-mic-air-features-price-review/

163.   MPV notified Insta360 that it infringed the '418 Patent no later than the filing date of this complaint.

164.   Insta360's knowledge of the '418 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '418 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '418 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

165.   Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '418 Patent.

166.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '418 Patent are met directly infringes the '418 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '418 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with adaptive image capture capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the Insta360

collaborative handheld control functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party infringers how to make and use the collaborative handheld control features of the Accused Products.

167. Insta360 induces third-party infringers to infringe the asserted claims of the '418 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '418 Patent. Insta360 advertises and promotes the collaborative handheld control of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

168. In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

169.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '418 Patent. For example, the Accused Products include collaborative handheld control identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

170.    Insta360 also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '418 Patent.

171.    The collaborative handheld control features are specially made and adapted to infringe the asserted claims of the '418 Patent.

172.    The collaborative handheld control features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the Accused Products solely in a manner that is covered by the '418 Patent, they have no substantial non-infringing use. At least by MPV's notice of

Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '418 Patent and they were in fact used to infringe.

173.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '418 Patent under 35 U.S.C. § 271(c).

174.   Upon information and belief, Insta360's acts of infringement of the '418 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '418 Patent and how the Accused Products infringe them.  Rather than take a license to the '418 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

175.   Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 9,848,158

176.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

177.    MPV is the owner, by assignment, of U.S. Patent No. 9,848,158.  The '158 Patent was issued by the United States Patent and Trademark Office on December 19, 2017.

178.    As the owner of the '158 Patent, MPV holds all substantial rights in and under the '418 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

179.    The '158 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

180.    Insta360 has infringed, and continues to infringe, at least claim 1 of the '158 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '158 Patent without authorization or license as exemplified below.

181.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '158 Patent and feature structure and/or functionality comprising the steps noted above.

182.   Insta360 has used and tested the Accused Products in the United States.

183.   Insta360 has infringed and continues to infringe the '158 Patent.

184.   Insta360's activities were without authority or license.

185.   Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

186.   The Accused Products meet each and every limitation of each asserted claim of the '158 Patent either literally or under the doctrine of equivalents.

187.   Claim 23 recites an embodiment of the claimed subject matter:

A non-transitory computer readable medium having stored thereon instructions executable by a processor of a processor-based device having a display and a memory accessible to said processor, to cause the processor to perform operations comprising:

receiving, from a user interface, at least one of a first input, a second input, a third input, a fourth input, or a confirmation

input;

storing a digital video sequence comprising a sequence of frames;

displaying, on a display, a currently selected frame of the digital video sequence;

transitioning to a start frame selection mode in response to the user interface receiving the first input, wherein changing the position of a start frame marker causes the currently selected frame to scroll to a corresponding frame at the position of the start frame marker;

transitioning to an end frame selection mode in response to the user interface receiving the second input, wherein the start frame selection mode is separate from the end frame selection mode, wherein changing the position of an end frame marker causes the currently selected frame to scroll to a corresponding frame at the position of the end frame marker;

scrolling through the digital video sequence in a first temporal direction in response to the user interface receiving the third

input;

scrolling through the digital video sequence in a second temporal direction in response to the user interface receiving the fourth input;

establishing a start frame as a currently selected frame in response to the user interface receiving a start frame selection input while the device is in the start frame selection mode, wherein the start frame selection input is separate from the first input;

establishing an end frame as the currently selected frame in response to the user interface receiving an end frame selection input while the device is in the end frame selection mode, wherein the end frame selection input is separate from the second input, and wherein the display is further configured to display an indication of whether the start frame selection mode is selected or the end frame selection mode is selected; and

storing a trimmed digital video sequence comprising frames of the digital video sequence between the start frame and the end

frame.

188.   The Accused Products comprise a non-transitory computer-readable medium having instructions stored thereon, the instructions comprising instructions to receive, from a user interface, at least one of a first input, a second input, a third input, a fourth input, or a confirmation input;

189.   For example, The Accused Products (the Insta360 app) receive by the Insta360 app user interface at least one of a first input (*e.g.,* pressing the start frame marker), a second input (*e.g.,* pressing the end frame marker), a third input (*e.g.,* dragging the start frame marker to the right), a fourth input (*e.g.,* dragging the end frame marker to the left), and a confirmation input (the user confirms that they want to trim the video).



https://www.youtube.com/watch?v=H4t7bzOCkVo

190. The Accused Products contain instructions to store a digital video sequence comprising a sequence of frames

191. For example, the Accused Products stores a digital video (*e.g.,* "digital video sequence comprising a sequence of frames").



https://www.youtube.com/watch?v=H4t7bzOCkVo

192. The Accused Products contain instructions to display, on a display, a currently selected frame of the digital video sequence.

193.    For example, the Accused Products displays a currently selected

frame of the video sequence.



https://www.youtube.com/watch?v=H4t7bzOCkVo

194.    The Accused Products contain instructions to transition to a start

frame selection mode in response to the user interface receiving the first input,

wherein changing the position of a start frame marker causes the currently selected

frame to scroll to a corresponding frame at the position of the start frame marker.

195.    For example, the Accused Products transitions, by the smartphone's processor, to a start frame selection mode in response to the touchscreen (*e.g.*, "user interface") receiving a press at the start frame marker (*e.g.*, "first input"), wherein changing the position of the start frame marker causes the currently selected frame to scroll to the frame corresponding to the start frame marker (*e.g.*, "corresponding frame at the position of the start frame marker").

  

https://www.youtube.com/watch?v=H4t7bzOCkVo

196.    The Accused Products contain instructions to transition to an end frame selection mode in response to the user interface receiving the second input, wherein the start frame selection mode is separate from the end frame selection mode, wherein changing the position of an end frame marker causes the currently selected frame to scroll to a corresponding frame at the position of the end frame marker.

197.    For example, the Accused Products transitions to an end frame selection mode in response to the touchscreen receiving a press at the end frame marker (*e.g.*, "second input", wherein the start frame selection mode is separate from the end frame selection mode, wherein changing the position of the end frame marker causes the currently selected frame to scroll to the frame corresponding to the end frame marker (*e.g.*, "corresponding frame at the position of the end frame marker").

  

https://www.youtube.com/watch?v=H4t7bzOCkVo

198.    The Accused Products contain instructions to scroll through the digital video sequence in a first temporal direction in response to the user interface receiving the third input.

199.    For example, the Accused Products scrolls through the digital video in a left to right direction (*e.g.*, "first temporal direction") in response to the touchscreen receiving an input dragging the start frame marker to the right (*e.g.*,

"third input").

 

https://www.youtube.com/watch?v=H4t7bzOCkVo

200.  The Accused Products contain instructions to scroll through the digital video sequence in a second temporal direction in response to the user interface receiving the fourth input.

201.  For example, the Accused Products scrolls through the digital video in a right to left direction (*e.g.*, "second temporal direction") in response to the touchscreen receiving an input dragging the end frame marker to the left (*e.g.* "fourth input").



https://www.youtube.com/watch?v=H4t7bzOCkVo

202. The Accused Products contain instructions to establish a start frame as a currently selected frame in response to the user interface receiving a start frame selection input while the device is in the start frame selection mode, wherein the start frame selection input is separate from the first input.

203. For example, the Accused Products establish the first frame at the start frame marker (*e.g.*, "start frame") as the currently selected frame in response to the touchscreen receiving an input releasing the start frame marker (*e.g.*, "start frame selection input") while the smartphone is in the start frame selection mode, wherein the releasing of the start frame marker is separate from the pressing of the start frame marker.

 

https://www.youtube.com/watch?v=qzmaeVtNXQ0

204.   The Accused Products contain instructions to establish an end frame as the currently selected frame in response to the user interface receiving an end frame selection input while the device is in the end frame selection mode, wherein the end frame selection input is separate from the second input, and wherein the display is further configured to display an indication of whether the start frame selection mode is selected or the end frame selection mode is selected.

205.   For example, the Accused Products establishes the last frame at the end frame marker (*e.g.*, "end frame") as the currently selected frame in response to the touchscreen receiving an input releasing the end frame marker (*e.g.*, "end frame selection input") while the smartphone is in the end frame selection mode, wherein

the releasing of the end frame marker is separate from the pressing of the end frame marker.







https://www.youtube.com/watch?v=qzmaeVtNXQ0

206.   The Accused Products contain instructions to store a trimmed digital video sequence comprising frames of the digital video sequence between the start

frame and the end frame.

207.   For example, the Accused Products stores a trimmed digital video comprising frames of the digital video between the first frame at the start frame marker and the last frame at the end frame marker.

  

https://www.youtube.com/watch?v=qzmaeVtNXQ0

208.   MPV notified Insta360 that it infringed the '158 Patent no later than the filing date of this complaint.

209.   Insta360's knowledge of the '158 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '158 Patent are met, extends to its knowledge that the third-party

infringers' use of the Accused Products directly infringes the '158 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

210.   Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '158 Patent.

211.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '158 Patent are met directly infringes the '158 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '158 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with digital video trimming capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the Insta360 collaborative handheld control functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party

infringers how to make and use the collaborative handheld control features of the Accused Products.

212.    Insta360 induces third-party infringers to infringe the asserted claims of the '158 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '158 Patent. Insta360 advertises and promotes the digital video trimming feature of the Accused Products and encourages the third-party infringers to operate them in an infringing manner.  Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

213.    In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

214.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '158 Patent. For example, the Accused Products include digital video trimming

identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

215.   Insta360 also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '158 Patent.

216.   The digital video trimming features are specially made and adapted to infringe the asserted claims of the '158 Patent.

217.   The digital video trimming features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the Accused Products solely in a manner that is covered by the '158 Patent, they have no substantial non-infringing use. At least by MPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '158 Patent and they were in fact used to infringe.

218.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '158 Patent under 35 U.S.C. § 271(c).

219.    Upon information and belief, Insta360's acts of infringement of the '158 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '158 Patent and how the Accused Products infringe them.  Rather than take a license to the '158 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

220.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 6
## INFRINGEMENT OF U.S. PATENT NO. 10,425,612

221.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

222.    MPV is the owner, by assignment, of U.S. Patent No. 10,425,612.

The '612 Patent was issued by the United States Patent and Trademark Office on September 24, 2019.

223.    As the owner of the '612 Patent, MPV holds all substantial rights in and under the '612 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

224.    The '612 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

225.    Insta360 has infringed, and continues to infringe, at least claim 1 of the '612 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '612 Patent without authorization or license as exemplified below.

226.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '612 Patent and feature structure and/or functionality comprising the steps noted above.

227.    Insta360 has used and tested the Accused Products in the United States.

228.    Insta360 has infringed and continues to infringe the '612 Patent.

229.    Insta360's activities were without authority or license.

230.   Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

231.   The Accused Products meet each and every limitation of each asserted claim of the '612 Patent either literally or under the doctrine of equivalents.

232.   Claim 12 recites an embodiment of the claimed subject matter:

> A non-transitory computer readable medium having stored thereon instructions executable by a processor of a processor-based device having a display and a memory accessible to said processor, to cause the processor to perform operations comprising:
>
> during a start frame selection mode, responsive to receipt of a user input changing a position of a start frame marker relative to a timeline via a user interface of the processor-based device, scrolling to and displaying a currently-selected frame of a digital video comprising an original sequence of frames on said display and establishing, in the memory of the processor-

based device, the currently-selected frame as a start frame, said digital video being stored in the memory of the processor-based device; and

responsive to one or more subsequent user inputs via the user interface;

facilitating, during an end frame selection mode, user selection of an end frame by permitting a user to scroll to a desired end frame of the sequence of frames by changing a position of an end frame marker relative to the timeline, displaying the end frame, and establishing, in the memory, the user's selection of the end frame as a designated end frame;

during each of selection of the start frame and the designated end frame, presenting on the display an indication of whether the processor-based device is in the start frame selection mode or the end frame selection mode; and

storing, in the memory, a trimmed digital video sequence comprising the start frame and the designated end frame along with other frames of the original sequence of frames;

233.   The Accused Products comprise a non-transitory computer readable medium having stored thereon instructions executable by a processor of a processor-based device having a display and a memory accessible to said processor, to cause the processor to perform operations.

234.   For example, the Accused Products comprise an application on a smartphone (*e.g.,* "processor-based device") having a display and a memory accessible to said smartphone.



https://apps.apple.com/us/app/insta360/id1491299654

235.   The Accused Products contain instructions to, during a start frame

selection mode, responsive to receipt of a user input changing a position of a start frame marker relative to a timeline via a user interface of the processor-based device, scroll to and display a currently-selected frame of a digital video comprising an original sequence of frames on said display and establish, in the memory of the processor-based device, the currently-selected frame as a start frame, said digital video being stored in the memory of the processor-based device.

236.   For example, the Accused Products contain instructions to, during a start frame selection mode, respond to a receipt of a user's input changing the position of the start frame marker relative to the timeline via the Insta360 app's user interface.



https://www.youtube.com/watch?v=H4t7bzOCkVo



https://www.youtube.com/watch?v=H4t7bzOCkVo

237.   The Accused Products contain instructions to respond to one or more subsequent user inputs via the user interface.

238.   For example, the Accused Products contain instructions to respond to one or more subsequent user inputs (*e.g.*, pressing and/or dragging the start and/or end frame markers) via the Insta360 app user interface.



https://www.youtube.com/watch?v=H4t7bzOCkVo

239.   The Accused Products contain instructions to facilitate, during an end frame selection mode, user selection of an end frame by permitting a user to scroll to a desired end frame of the sequence of frames by changing a position of an end frame marker relative to the timeline, displaying the end frame, and establish, in the memory, the user's selection of the end frame as a designated end frame.

240.   For example, the Accused Products facilitate during an end frame selection mode a user selection of an end frame by permitting a user to scroll to a desired end frame by changing the end frame marker relative to the timeline (*e.g.*, user touch dragging the end frame). The Insta360 app displays the end frame and establishes the user's selection of the end frame as the designated end frame.

 

https://www.youtube.com/watch?v=H4t7bzOCkVo

241.   The Accused Products contain instructions to, during each of selection of the start frame and the designated end frame, present on the display an

indication of whether the processor-based device is in the start frame selection mode or the end frame selection mode.

242.   For example, during the selection of the start frame and designated end frame, the Accused Products present on the displays a timestamp (*e.g.*, "indication") above either the start frame marker to indicate whether the start frame selection mode is selected or above the end frame marker to indicate whether the end frame selection mode is selected.



https://www.youtube.com/watch?v=H4t7bzOCkVo

243.   The Accused Products contain instructions to store, in the memory, a trimmed digital video sequence comprising the start frame and the designated end frame along with other frames of the original sequence of frames.

244. For example, the Accused Products store a trimmed digital video comprising the start frame and the designated end frame along with the frames of the original sequence of frames.



https://www.youtube.com/watch?v=qzmaeVtNXQ0

245. MPV notified Insta360 that it infringed the '612 Patent no later than the filing date of this complaint.

246. Insta360's knowledge of the '612 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '612 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '612 Patent, or, at the

very least, rendered Insta360 willfully blind to such infringement.

247.   Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '612 Patent.

248.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '612 Patent are met directly infringes the '612 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '612 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with digital video trimming capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the Insta360 collaborative handheld control functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the Insta360 websites (including, without limitation, the knowledge center, instructional videos and on the Insta360 branded website) directing and encouraging third-party infringers how to make and use the collaborative handheld control features of the

Accused Products.

249.    Insta360 induces third-party infringers to infringe the asserted claims of the '612 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '612 Patent. Insta360 advertises and promotes the digital video trimming feature of the Accused Products and encourages the third-party infringers to operate them in an infringing manner.  Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

250.    In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

251.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '612 Patent. For example, the Accused Products include digital video trimming identified above which the third-party infringers used in a manner such that all

limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

252.   Insta360 also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '612 Patent.

253.   The digital video trimming features are specially made and adapted to infringe the asserted claims of the '612 Patent.

254.   The digital video trimming features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the Accused Products solely in a manner that is covered by the '612 Patent, they have no substantial non-infringing use. At least by MPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '612 Patent and they were in fact used to infringe.

255.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '612 Patent under 35 U.S.C. § 271(c).

256.   Upon information and belief, Insta360's acts of infringement of the

'612 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '612 Patent and how the Accused Products infringe them.  Rather than take a license to the '612 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

257.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 7
## INFRINGEMENT OF U.S. PATENT NO. 10,728,490

258.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

259.    MPV is the owner, by assignment, of U.S. Patent No. 10,728,490. The '490 Patent was issued by the United States Patent and Trademark Office on

July 28, 2020.

260.   As the owner of the '490 Patent, MPV holds all substantial rights in and under the '490 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

261.   The '490 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

262.   Insta360 has infringed, and continues to infringe, at least claim 1 of the '490 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '490 Patent without authorization or license as exemplified below.

263.   The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '490 Patent and feature structure and/or functionality comprising the steps noted above.

264.   Insta360 has used and tested the Accused Products in the United States.

265.   Insta360 has infringed and continues to infringe the '490 Patent.

266.   Insta360's activities were without authority or license.

267.   Insta360's users, customers, distributors, agents and/or other third

parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

268. The Accused Products meet each and every limitation of each asserted claim of the '490 Patent either literally or under the doctrine of equivalents.

269. Claim 12 recites an embodiment of the claimed subject matter:

> A non-transitory computer readable medium having stored thereon instructions executable by a processor of a processor-based device having a display and a memory, to cause the processor to perform operations comprising:
>
> during a start frame selection mode and responsive to receipt of a user input changing a position of a start frame marker relative to a timeline via a user interface of the processor-based device, scrolling to and displaying a currently-selected frame of a digital video comprising an original sequence of frames on the display of said processor-based device, and establishing, in the memory of the processor-based device, the currently-selected frame as a start frame;

during an end frame selection mode and responsive to one or more subsequent user inputs via the user interface, scrolling to and displaying a desired end frame of the sequence of frames by changing a position of an end frame marker relative to the timeline, and establishing, in the memory, the desired end frame as a designated end frame;

during each of scrolling to the start frame and the scrolling to the designated end frame, presenting on the display an indication of whether the processor-based device is in the start frame selection mode or the end frame selection mode; and

during each of selection of the start frame and the designated end frame, presenting on the display an indication of whether the processor-based device is in the start frame selection mode or the end frame selection mode; and

storing, in the memory, a trimmed digital video sequence comprising at least the start frame and the designated end frame;

270.    The Accused Products comprise a non-transitory computer readable

medium having stored thereon instructions executable by a processor of a processor-based device having a display and a memory accessible to said processor, to cause the processor to perform operations.

271.   For example, the Accused Products comprise an application on a smartphone (*e.g.,* "processor-based device") having a display and a memory accessible to said smartphone.



https://apps.apple.com/us/app/insta360/id1491299654

272.   The Accused Products contain instructions to, during a start frame selection mode and responsive to receipt of a user input, change a position of a

start frame marker relative to a timeline via a user interface of the processor based
device, scroll to and display a currently-selected frame of a digital video
comprising an original sequence of frames on the display of said processor-based
device, and establish, in the memory of the processor-based device, the currently-
selected frame as a start frame.

273.   For example, the Accused Products contain instructions to, during a
start frame selection mode, respond to a receipt of a user's input changing the
position of the start frame marker relative to the timeline via the Insta360 app's
user interface, scroll to and display a currently-selected frame of the video
comprising the original sequence of frame on said display and establishes in the
smartphone memory the currently selected frame as a start frame.



https://www.youtube.com/watch?v=H4t7bzOCkV

274.   The Accused Products contain instructions to, during an end frame

selection mode and responsive to one or more subsequent user inputs via the user interface, scroll to and display a desired end frame of the sequence of frames by changing a position of an end frame marker relative to the timeline, and establish, in the memory, the desired end frame as a designated end frame.

275.    For example, during an end frame selection mode, the Accused Products respond to a receipt of a user's input changing the position of the start frame marker relative to the timeline via the Insta360 app's user interface.



https://www.youtube.com/watch?v=H4t7bzOCkVo

276.    The Accused Products contain instructions to, during each of scrolling to the start frame and the scrolling to the designated end frame, present on the display an indication of whether the processor-based device is in the start frame selection mode or the end frame selection mode.

277.   For example, During the scrolling to the start frame and scrolling to the designated end frame, the Accused Products present on the display a timestamp (*e.g.*, "indication") above either the start frame marker to indicate whether the start frame selection mode is selected or above the end frame marker to indicate whether the end frame selection mode is selected.

 

https://www.youtube.com/watch?v=qzmaeVtNXQ0

278.   The Accused Products contain instructions to store, in the memory, a trimmed digital video sequence comprising the start frame and the designated end frame along with other frames of the original sequence of frames.

279.   For example, the Accused Products store, in the memory, a trimmed digital video sequence comprising at least the start frame and the designated end

frame.

  

https://www.youtube.com/watch?v=qzmaeVtNXQ0

280.   MPV notified Insta360 that it infringed the '490 Patent no later than the filing date of this complaint.

281.   Insta360's knowledge of the '490 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '490 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '490 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

282.   Insta360 has, since at least as early as the filing date of this complaint,

known or been willfully blind to the fact that the third-party infringers' use of the

Accused Products directly infringes the '490 Patent.

283.   With knowledge of or willful blindness to the fact that the third-party

infringers' use of the Accused Products in their intended manner such that all

limitations of the asserted claims of the '490 Patent are met directly infringes the

'490 Patent, Insta360 has actively encouraged the third-party infringers to directly

infringe the '490 Patent by making, using, testing, selling, offering for sale,

importing and/or licensing the Accused Products by, for example: marketing the

Accused Products with digital video trimming capabilities to the third-party

infringers; supporting and managing the third-party infringers' use of the Insta360

collaborative handheld control functionalities; and providing technical assistance

to the third-party infringers during their continued use of the Accused Products

such as by, for example, publishing instructional information on the Insta360

websites (including, without limitation, the knowledge center, instructional videos

and on the Insta360 branded website) directing and encouraging third-party

infringers how to make and use the collaborative handheld control features of the

Accused Products.

284.   Insta360 induces third-party infringers to infringe the asserted claims

of the '490 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '490 Patent. Insta360 advertises and promotes the digital video trimming feature of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

285. In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

286. Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '490 Patent. For example, the Accused Products include digital video trimming identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended

functionality of the accused products.

287.    Insta360 also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '490 Patent.

288.    The digital video trimming features are specially made and adapted to infringe the asserted claims of the '490 Patent.

289.    The digital video trimming features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the Accused Products solely in a manner that is covered by the '490 Patent, they have no substantial non-infringing use. At least by MPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '490 Patent and they were in fact used to infringe.

290.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '490 Patent under 35 U.S.C. § 271(c).

291.    Upon information and belief, Insta360's acts of infringement of the '490 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '490 Patent and

how the Accused Products infringe them.  Rather than take a license to the '490 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

292.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE
## NOTICE OF REQUIREMENT OF LITIGATION HOLD

293.    Insta360 is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Insta360 knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by

any party or potential party in this lawsuit, whether created or residing in hard copy

form or in the form of electronically stored information (hereafter collectively

referred to as "Potential Evidence").

294.   As used above, the phrase "electronically stored information" includes

without limitation: computer files (and file fragments), e-mail (both sent and

received, whether internally or externally), information concerning e-mail

(including but not limited to logs of e-mail history and usage, header information,

and deleted but recoverable e-mails), text files (including drafts, revisions, and

active or deleted word processing documents), instant messages, audio recordings

and files, video footage and files, audio files, photographic footage and files,

spreadsheets, databases, calendars, telephone logs, contact manager information,

internet usage files, and all other information created, received, or maintained on

any and all electronic and/or digital forms, sources and media, including, without

limitation, any and all hard disks, removable media, peripheral computer or

electronic storage devices, laptop computers, mobile phones, personal data

assistant devices, Blackberry devices, iPhones, video cameras and still cameras,

and any and all other locations where electronic data is stored.  These sources may

also include any personal electronic, digital, and storage devices of any and all of

Insta360's agents, resellers, distributors or employees if Insta360's electronically stored information resides there.

295.   Insta360 is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Insta360's claims and/or defenses. To avoid such a result, Insta360's preservation duties include, but are not limited to, the requirement that Insta360 immediately notify its agents, distributors, and employees to halt and/or supervise the auto-delete functions of Insta360's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

MPV hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

MPV prays for the following relief:

  a.  That Insta360 be summoned to appear and answer;

  b.  That the Court enter judgment that Insta360 has infringed the '771, '544, '155, '418, '158, '612, and '490 Patents.

c.  That the Court grant MPV judgment against Insta360 for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d.  That Insta360's infringement be found to have been willful;

e.  That this case be found to be exceptional under 35 U.S.C. § 285; and

f.  That MPV be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  September 16, 2025          Respectfully submitted,


By: _____
    Cabrach J. Connor
    Cab@CLandS.com
    Texas Bar No. 24036390
    Jennifer Tatum Lee
    Jennifer@CLandS.com
    Texas Bar No. 24046950
    John M. Shumaker
    John@CLandS.com
    Texas Bar No. 24033069

    CONNOR LEE & SHUMAKER PLLC

609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.646.2060 Telephone
888.387.1134 Facsimile